ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| CB Portable Toilet Rental and Services | )    ASBCA No. 63449 |
| | ) |
| Under Contract No. N00189-22-P-0368 | ) |

APPEARANCE FOR THE APPELLANT:     Chizoma B. Onyems
         President
         Auburn, CA

APPEARANCES FOR THE GOVERNMENT:     Craig D. Jensen, Esq.
         Navy Chief Trial Attorney
         James E. Vaiden, Esq.
         Autumn W. Hazy, Esq.
         Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK

This appeal is about the termination for convenience of a commercial items contract for the delivery and maintenance of portable toilets and hand washing stations. Appellant, CB Portable Toilet Rental and Services (CB Portable), appears pro se and has requested that we decide the appeal under Board Rule 11, suggesting the documents in the record substantially tell its story.[1] The government consented but requested bifurcation of entitlement and quantum. It argues that entitlement is capped by the amount of funding it chose to allot to the contract. The Board agreed to bifurcate and therefore decides only entitlement here.

FINDINGS OF FACT

I. The Contract

1. On May 27, 2022, the Naval Supply Systems Command Fleet Logistics Center Norfolk and CB Portable executed the contract identified above.[2] The agreement

---

[1] Rule 11 permits either party to waive a hearing and submit its case on the record.

[2] The contract names the government component as "NAVSUP FLC NORFOLK CONTRACTING" (R4, tab 9 at 106). A government website clarifies the entity's name. *See NAVSUP Fleet Logistics Center Norfolk,* https://www.navsup.navy.mil/NAVSUP-Enterprise/NAVSUP-FLC-Norfolk (last visited July 18, 2023).

required CB Portable to provide portable toilets and hand washing stations to the Center for Security Forces (CENSECFOR) at Camp Lejeune, North Carolina. (R4, tab 9) The contract's "period of performance. . . [was to be] five 12-month ordering periods" running from June 13, 2022, until June 12, 2023 (R4, tab 9 at 114). Thus, it contained five contract line items (CLINs) cryptically identifying locations for services. They were OP INDOC for CLIN 0001, Crew Served Weapons for CLIN 0002, NAV B for CLIN 0003, NAV A for CLIN 0004, and COX for CLIN 0005. Each CLIN locale was the site of a training class. Each was to receive two portable toilets and one hand washing station, to be serviced weekly, for specified dates. The dates were given in lists of date ranges for classes, generally reflecting four or five-day work weeks beginning in June or July and running into September. A table in the contract provided the same sets of dates for the CLINs and added "TBD" at the end of each list, suggesting later dates would be added. The following language also appeared separately from the CLINs: "The site currently requires two perpetual portable restrooms and one handwashing station to include maintenance and cleaning service twice a month." It did not define what was meant by "site" or "perpetual." Each piece of equipment was to be shipped to LTJG Victoria Caviston of the CENSECFOR supply department at Camp Lejeune. (R4, tabs 9 at 108-115, 14 at 167-68, 18 at 191)

2. The contract incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (NOV 2021) (R4, tab 9 at 121).[3]

3. The CLINs were firm-fixed price, with each specifying a quantity of units, a unit price, and a total price (R4, tab 9 at 108-12). The contract did not define a unit. However, both parties now agree that a unit is composed of two portable toilets and one hand washing station provided on a weekly basis (R4, tab 31 at 265 (CB Portable claim seeking the unit price on a weekly basis for the three-piece combination); gov't corrected br. at 18). The unit price for all the CLINS was $1,030 (R4, tab 9 at 108-12). No price was given for the perpetual restrooms/hand washing station. The total price of the contract was $145,230 (R4, tab 9 at 106).

4. At the time of award, CLINs 0001 through 0005 were only incrementally funded, totaling $29,870 for all of them. The contract stated that the parties contemplated the government would allot the remainder of the price by August 15, 2022. (R4, tab 9 at 108-12, 114, 133-34) The contract contained DFARS 252.232-7007, LIMITATION OF GOVERNMENT'S OBLIGATION (APR 2014) (R4, tab 9 at 132-34). That clause, referred to as the LOGO, repeated the initial funding

---

[3] The contract says "DEC 2021." However, the version in effect at the time was from November and there is no December version. We deem the December reference a drafting error.

limitation upon the five CLINs and imposed requirements and constraints upon their performance. Under paragraph (b), CB Portable agreed to perform up to the point at which the total amount payable by the government, including reimbursement in the event of termination of any or all the CLINs for the government's convenience, approximated the current amount allotted to the contract. It was not authorized to proceed beyond that point. The government was not obligated to reimburse CB Portable beyond the allotted amount for each CLIN regardless of anything to the contrary in the clause entitled "TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT." (*Id.*)

5. Paragraph (c) of the LOGO clause required the contractor to provide a particularized written notification to the contracting officer at least ninety days prior to the date when, in its best judgment, the work would reach the point where the total amount payable by the government, including termination for convenience costs, approximated 85% of the funds allotted for the CLINs (R4, tab 9 at 133). However, at the outset this contract scheduled CB Portable to reach 85% of the initial allotted funding for each CLIN less than 90 days after contract performance commenced on June 13, 2022 (R4, tab 9 at 108-12).[4]

II. Contract Administration & Performance

6. On the date the contract was executed, CB Portable's manager emailed the following inquiry to the contracting officer:

> My . . . review, there will be 10 portable parties and the
> total amount payable between Month of May 31 through
> September (4months) [sic], we shall be receiving

---

[4] CLIN 0001 was allotted $8,240 at contract award. Multiplying that figure by .85 and dividing by $1,030 per unit reveals that CB Portable would reach 85% exhaustion after delivering roughly seven units under the CLIN's schedule by around August 15, 2022, which is about 60 days after performance commenced on June 13 ((8240 x .85)/1030=6.8). (R4, tab 9 at 108) CLIN 0002 was allotted $10,300. The same calculation leads to exhaustion of 85% after delivering roughly nine units by around September 6, about 85 days into performance ((10300 x .85)/1030=8.5). (R4, tab 9 at 109) CLIN 0003 was allotted $2,060, leading to 85% exhaustion after delivering approximately two units by around August 1, about 49 days into performance ((2060 x .85)/1030=1.7) (R4, tab 9 at 110). CLIN 0004 was allotted $4,120, with 85% exhaustion occurring after delivery of about three units around August 8, 56 days into performance ((4120 x .85)/1030=3.4) (R4, tab 9 at 111). CLIN 0005 was allotted $5,150, leading to 85% exhaustion after about four units were delivered around August 29, 77 days into performance ((5150 x .85)/1030=4.25) (R4, tab 9 at 112).

$36,307.50 or is it something diferent [sic]. Please confirm this amount will be received monthly.

The contracting officer responded: "That is correct." (R4, tab 13 at 157-58)

7. Despite the contract's identification of specific locations for CB Portable to place equipment, the government's actual intent was to obtain services for five live fire training courses that took place at various firing ranges. There was no dedicated range for each course so they could change depending on their availability. The government intended to direct CB Portable by email where to put the equipment once that was determined, which is how it performed the contract. After arriving at Camp Lejeune, CB Portable began assembling the equipment. On June 7, 2022, the government notified it of the different prospective range locations. The government informed it that it could not stage equipment at the ranges. It would be requesting service per "convening" and the equipment would only be allowed at the sites during the identified dates and times. (R4, tab 45)

8. On June 9, 2022, CB Portable emailed the contracting officer, observing the contract had specified five locations for the equipment but that, per discussions, it now understood equipment would have to be moved around to other ranges. CB Portable requested the contracting officer allow it to stage the equipment at either one central place or at the five contractual locations, making it available for movement to other ranges. (R4, tab 16 at 171) On June 13, Lieutenant Caviston instructed the contracting officer that the request was not feasible. The equipment would have to be brought on and off the base as needed. (R4, tab 17 at 181) After CB Portable repeated the staging request on June 20, the contracting officer denied it on June 21 (R4, tab 20 at 194-95).

9. On June 13, 2022, Lieutenant Caviston instructed CB Portable to provide two portable toilets and a handwashing station at a location called FOB GSRA for June 28 and 29 (R4, tab 18 at 191). FOB GSRA is not among the locations listed in the contract (R4, tab 9 at 108-12). CB Portable responded that it would comply. A copy of this request was later provided to the contracting officer. (R4, tabs 18-19) On June 15, Lieutenant Caviston directed CB Portable to provide two toilets and a handwashing station for July 11 at a location called Mile Hammock Bay. She also sought them for July 9 and 26 at a location called SR-8. (R4, tab 20 at 195-96) Neither Mile Hammock Bay nor SR-8 are among the locations listed in the contract

(R4, tab 9 at 108-12). On June 20, CB Portable forwarded these requests to the contracting officer as part of certain inquiries (R4, tab 20).

10. On June 21, 28, July 8, 15, and 19, 2022, CB Portable submitted invoices to the contracting officer, each for the prior week. The locations given included ones previously identified by the contract or correspondence, such as NAV A and B, FOB GSRA, and Mile Hammock Bay, as well as others, such as M1 & M2, Sneads Ferry Road & Combat Town Road, Lyman Road & Range Road, Courthouse Road, and Holly Ridge. (R4, tab 21) In a response dated July 13 (at the point in time when the government possessed the first three invoices), the contracting officer recognized that equipment had been sought for various locations, but accused CB Portable of overbilling (R4, tab 22 at 208).

11. On July 29, 2022, the government issued a request to CB Portable (copied to the contracting officer) seeking two toilets and a hand washing station for August 4 at a location called K507. CB Portable sent an acknowledgement to the contracting officer. (R4, tab 24) K507 is not among the locations listed in the contract (R4, tab 9 at 108-12).

12. In a message to the contracting officer dated August 8, 2022, CB Portable noted that it had been instructed to place equipment at locations that were different from those identified by the contract (R4, tab 25 at 218-19). On the same date, the contracting officer informed CB Portable that its invoices did not match the contract's "potential convening dates." She declared the dates given in the contract were only "potential," asserting that "the command was to confirm the approved dates and their corresponding locations." She concluded that "units that were not expressly requested for trainings at their corresponding locations will not be approved for payment." (R4, tab 25 at 219) From that we infer that units requested by the command would be approved for payment. On August 9, Lt. Matthew Brailsford of CENSECFOR emailed CB Portable, copying the contracting officer, that the contract's schedule was only for planning purposes. He did say that he deferred to the contracting officer. (R4, tab 28 at 234) There is no indication she objected.

13. On Friday, August 12, 2022, the contracting officer's supervisor emailed CB Portable that the contract was terminated in its entirety for convenience pursuant to FAR 52.212-4(l), effective August 19, 2022. CB Portable was instructed to stop all work on August 19 and not to incur additional costs beyond that date. The message did not provide a reason for the termination, but it was issued one business day before the contract's LOGO clause contemplated that the government would allot the remaining $115,630 of the contract price on August 15. The government calculated CB Portable was owed $32,960 through the effective date. (R4, tab 9 at 134; tab 29)

5

Also on August 12, the government unilaterally modified the contract to add an additional $2,820 in funding for CLINs 0001, 0002, and 0004 (R4, tab 11). On August 18, the government added another $270 for CLIN 0004 (R4, tab 12). Combined with the original amount of $29,870, the total funded equaled the $32,960 the government claimed it owed CB Portable. By letter dated August 22, 2022, CB Portable reported to the contracting officer that, as directed by the termination notification, it had completed services and stopped operations as of August 19 (R4, tab 32). The government paid CB Portable $32,960 on September 14, 2022 (R4, tab 34).

III. The Claims & Appeal

14. On August 19, 2022, CB Portable submitted a certified claim to the contracting officer for $398,678.05. The original claim contains 26 different categories of alleged costs. Included is a listing of services provided. CB Portable charged $1,030 for the combination of two toilets and one hand washing station for each week of services, adding a $500 charge for each additional piece of equipment placed at a scene. (R4, tab 31 at 242-46, 248-51, 265-67) The initial claim characterized the costs being sought variously as "termination costs" and "equitable adjustment." It also stated that the contracting officer mentioned some service locations would be different and included an allegation of bad faith termination (*id.* at 243, 245-246). An August 31 invoice from CB Portable recognized the government's $32,960 payment, reducing the amount it sought to $365,718.05 (R4, tab 33 at 327). On September 19, CB Portable submitted a certified claim for an additional $52,449.60 for delay costs incurred between August 22 and September 18 (R4, tab 35). On September 27, CB Portable notified the government it was charging it $3,400 per day of delay costs and submitted a $23,800 invoice applicable to the week of September 19 through 25 (R4, tab 37). It repeated that charge for each of the weeks of September 26 through October 2, and October 3 through October 9 (R4, tabs 38, 41). On October 10, CB Portable amended its certified claim to include more explanation and to add four new categories of costs to the prior 26 – the $52,449.60 sought on September 19, plus the three charges for $23,800, increasing the total amount sought (after subtraction of what had been paid) to $489,567.65 (R4, tab 42 at 361-69, 372). The amended claim noted that the contracting officer's representative asked to have equipment placed in locations other than those identified in the contract schedule. It also included an allegation that the government breached the covenant of good faith and fair dealing by failing to abide by the contract (*id.* at 363, 366).

6

15.  CB Portable's amended claim is organized into 30 categories.  The following 13 are relevant for purposes of this opinion:

> Item 4, Delay & Disruption – under this category, CB Portable claims that it went three weeks during performance with no communication from the contracting officer (R4, tab 42 at 370).

> Items 6–9, 13, 22-24, Work Performed and Not Paid, Profits, Employee Hourly Rates, Direct Labor Cost, Out of Pocket Expenses, Maintenance Expense, Utility Cost, Treatment Facility Costs – these items represent costs associated with contract performance completed prior to the termination (R4, tab 42 at 370-72).

> Items 27-30, Post Termination Invoices – these items represent the $52,449.60 for delay costs incurred between August 22 and September 18 (R4, tab 35 at 334), plus the charges for $23,800 for each of the three weeks between September 19 and October 19, 2022 (R4, tabs 37 at 349, 38 at 353, 41 at 360, 42 at 372).

16.  On November 4, 2022, the contracting officer issued a final decision concluding that CB Portable was not entitled to any additional amounts beyond the $32,960 already paid (R4, tab 1).  CB Portable has appealed.

DECISION

I.  CB Portable's Requests for Additional Damages Beyond Termination for Convenience Compensation

CB Portable seeks $489,567.05 in termination for convenience compensation.  It also pursues damages for breach of the covenant of good faith and fair dealing, breach of warranty, and it asserts the government constructively changed the contract (app. filing dtd. March 21, 2023 at 4-5).[5]  The government responded that those

_____

[5] CB Portable's complaint included a demand for $1,500,000 "in damages for. . . bad faith dealing by not abiding by the terms of the . . . agreement" (compl. at 30).  The government sought to dismiss that demand for lack of jurisdiction but CB Portable abandoned it (app. filing dtd. Feb. 15, 2023 at 2).  CB Portable then apparently changed its mind and in a subsequent filing advanced these new contentions (app. filing dtd. March 21, 2023).  The filing also repeated CB Portable's request for $489,567.  Because CB Portable characterized

contentions were not previously mentioned in CB Portable's claims and are therefore beyond our jurisdiction to consider. *See Wilwood Eng'g Inc.*, ASBCA Nos. 62773, 62774, 22-1 BCA ¶ 38,116 at 185,144-45 (indicating the Board cannot exercise jurisdiction over matters arising from operative facts different than those described in the claim).

We agree with the government respecting CB Portable's breach of warranty argument. CB Portable appears to assert that the government "warranted performance for one year and six months and an additional 4 years" and that the termination breached that obligation (app. filing dtd. March 21, 2023 at 4). We cannot discern that contention in either CB Portable's original claim or the amended one and therefore we cannot entertain it. To the extent we have overlooked it, we are unaware of such an absolute promise in the contract that might somehow negate the termination for convenience provision.

We disagree with the government's jurisdictional argument regarding CB Portable's breach of good faith and change contentions. CB Portable's initial certified claim accused the government of terminating in bad faith. Furthermore, its amended certified claim asserted that the government breached the duty of good faith and fair dealing by not abiding by the contract. (Finding 14) Thus, we possess jurisdiction over that allegation. However, on the merits CB Portable has not demonstrated a breach. The government has a right to terminate for convenience and that decision is final absent bad faith or a clear abuse of discretion. *E.g.*, *Tristana R. Harvey Career Planning & Consulting Series LLC*, ASBCA No. 60927, 17-1 BCA ¶ 36,826 at 179,478. To establish bad faith, CB Portable was required to show by clear and convincing evidence a specific intent to injure it. *Id.* It has failed to do that. Although the contract imposed a duty of good faith and fair dealing upon the government, because it was entitled to terminate for convenience it has not breached that duty. *Id.* at 179,479.

CB Portable's changes argument alleges that the government sought services beyond what the contract stated, requiring extra work. In its claims, CB Portable notes that the contracting officer recognized it would have to provide services at different locations and that the government desired equipment at places other than those described by the contract schedules (finding 14). Thus, its claims contain descriptions of the relevant operative facts. We therefore have jurisdiction. Indeed, as explained below, we agree that the parties changed the contract's performance requirements and

---

it as an equitable adjustment argument, the government suggests that it has not been previously asserted in a claim. However, CB Portable's claim uses termination costs and equitable adjustment interchangeably (finding 14). The allegation is just a further discussion of the claim already advanced.

8

incorporate that finding below in our termination for convenience entitlement determination.

      II.  The Termination for Convenience

The termination for convenience provision in this commercial items contract (finding 2) says that CB Portable should "be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges" that CB Portable "can demonstrate . . . have resulted from the termination." FAR 52.212-4(l). This clause entitles CB Portable to the price of the work performed under the contract prior to notice of termination, settlement expenses, and costs resulting from the termination. *Dellew Corp.*, ASBCA No. 58538, 15-1 BCA ¶ 35,975 at 175,783.

Ascertaining the price of the work performed requires us to figure out just that, what work was done and what its price was. CB Portable suggests the contracting officer's agreement when it asked her if it would receive $36,307.50 each month is dispositive (finding 6). Though the government proffers no explanation for that statement, the contract does not specify a monthly price for performance of the CLINs. Instead, the price is for units delivered upon a schedule unique to each CLIN. (Findings 1, 3)

For its part, the government simply adds up the number of time periods the contract scheduled services under CLINs 0001 through 0005 prior to the effective date of the termination, which was 21, and multiplies that by the $1,030 unit price to reach $21,630. It then turns to the contract's additional requirement for two perpetual portable restrooms and one hand washing station, acknowledging it is separate and apart from the CLINs. Pricing it too at $1,030 per week, which seems reasonable, it adds $10,300 to its tally for the ten weeks running from June 13, 2022 to August 19. Thus, says the government, the total price under the contract for the period performed was $31,930, which is below the $32,960 the government paid CB Portable.[6] (Gov't corrected br. at 7-8, 17-19) It ignores the other provisions of the termination clause.

The government essentially admits that CB Portable provided the performance scheduled in the contract's five CLINs, as well as the added "perpetual" service, until the effective date of the termination. But it fails to acknowledge that it obtained more from CB Portable. We know that the government expected that the relevant command could order equipment delivered to whatever locations it chose. In fact, the

---

[6] Although the termination for convenience clause provides for the price of work performed "prior to notice of termination," which was August 12, 2022, the government concedes CB Portable's entitlement through the effective date of the termination, August 19.

government issued directions to CB Portable, with notice to the contracting officer, for services on dates and at locations different from those identified in the contract, and CB Portable acknowledged them. Moreover, the contracting officer recognized that equipment was sought for various locations and declared in writing that the dates in the contract were merely "potential convenings" that would be addressed later by confirmations from the command as to the actual "approved dates and their corresponding locations." This point was reiterated by the government's statement to CB Portable, copied to the contracting officer, that the contract's schedule was for planning purposes. (Findings 7-12)

This contract's Changes clause, contained at FAR 52.212-4(c), says that "[c]hanges . . . may be made only by written agreement of the parties." We are satisfied that the combination of written government directions for services at locations other than those identified by the contract, copied to the contracting officer and acknowledged in writing by CB Portable, followed by the contracting officer's written recognition that the government was seeking services at various locations and would pay for them, and her written pronouncement that locations and times would be determined by the command, reflect a change to the contract's terms. The contract was changed from one only seeking services at fixed dates and locations to one where they could also be ordered by the government for other places and times it chose at the $1,030 unit price. For this reason, simply following the contract's schedule, as the government suggests, does not completely reveal what work was performed.

The government relies upon the LOGO clause to contend that it is not obligated to pay any costs exceeding the $32,960 it chose to allot to the contract's five CLINs. The government is correct that under the clause it need not reimburse CB Portable more than the amount funded to those CLINs, regardless of anything to the contrary in the termination for convenience provision (finding 4). However, the LOGO clause does not limit CB Portable's recovery of the price of its work. There are three components to CB Portable's performance. First, there are the units the government concedes CB Portable provided for specified dates and locations under the schedules contained in CLINs 0001 through 0005. These five CLINs were subject to the LOGO clause, but the government calculates that by the effective date of termination CB Portable's performance only exhausted $21,630 of the $32,960 allotted to them. (Findings 1, 3-4; gov't corrected br. at 8, 19) Second, there is the contract's requirement for two perpetual portable restrooms and one handwashing station (finding 3). The government has treated this provision as independent from the five CLINs (gov't corrected br. at 8, 19). We agree. Because only the five CLINs are constrained by the LOGO clause's funding limitation, this work, and the amount owed for it, is not. Finally, there are the units the government sought for other places and times that it chose that stem from the contract change. There is no evidence this changed work was made subject to the LOGO clause's funding restrictions.

10

The government also argues CB Portable cannot recover because it did not comply with paragraph (c) of the LOGO clause and provide notice when its performance of the five CLINs was 90 days out from the date when the total amount payable would approximate 85% of what the government allotted to them. The government's reliance upon this provision is pointless because a simple examination of the five CLIN schedules, the government's funding, and the employment of some basic math, shows that, without even factoring potential termination costs, at the time of award CB Portable was slated to reach 85% of the initial allotted funding for each CLIN less than 90 days after contract performance commenced on June 13, 2022 (finding 5). Thus, it was impossible to give the 90-day notice. This was as apparent to the government (the drafter of the contract) as it was to CB Portable. We decline to hold that at the beginning of performance the LOGO clause required CB Portable to explain the government's contract to it. Also, nothing in the LOGO clause provides that a contractor should be denied what it is otherwise owed if it fails to give this notice and the government does not suggest how in this case the absence of the notice prejudiced it (finding 4). Finally, the notice provision is inapplicable to the "perpetual" facilities and changed work that are independent of the CLINs and not subject to the LOGO clause.

Having found that CB Portable is entitled to the price of all the units it provided under the CLINs, the "perpetual" provision, and in response to government orders stemming from the contract change, we defer to the quantum phase the determination of the number of units provided.

What remains is FAR 52.212-4(l)'s additional allowance of "reasonable charges" that CB Portable "can demonstrate . . . have resulted from the termination," including settlement expenses. The Board says this broadly requires payment of charges that do not relate to work completed but fairly compensate the contractor. *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223. Indeed, the Board has perceived in this language an allowance of profit on certain components of this compensation. *Id.* at 175,233. CB Portable's amended claim is organized into 30 categories (finding 14). As explained below, we reject 13 of the categories at this stage of the proceedings.

A. Item no. 4: Delay & Disruption

CB Portable claims that it went three weeks during performance without communicating with the contracting officer (finding 15). It has not established that it incurred costs associated with that allegation that it should recover as fair compensation.

B. Items nos. 6-9, 13, 22-24:  Work Performed and Not Paid, Profits, Employee Hourly Rates, Direct Labor Cost, Out of Pocket Expenses, Maintenance Expense, Utility Cost, Treatment Facility Costs.

These items represent costs associated with contract performance completed prior to the termination (finding 15).  The price of this work has been addressed above and because the costs are charges relating to contract work that is complete, they are not separately recoverable.

C. Items nos. 27-30:  Post Termination Invoices

This is the post termination invoice for $52,449.60 for delay costs, and the three subsequent invoices for $23,800 for the period spanning from August 22, 2022, through October 9 (finding 14).  The notice of termination instructed CB Portable to stop all work as of August 19, 2022, and CB Portable confirmed that it had done so (finding 13).  It has not established a basis for recovering these sums.

The rest of the categories presented by CB Portable at least potentially reflect types of costs that might constitute "fair compensation," though we make no determination about that at this juncture.  We will consider evidence from CB Portable to justify and support these costs and reasonable profit in the quantum phase, as well as government evidence in opposition.  Nevertheless, there are factors that will likely reduce the final calculation.  First, to the extent portions of these costs supported work performed, they are subsumed within the unit prices and are not recoverable.  Second, after accounting for the price of performance, only $11,330 in funding remains allotted to the five CLINs subject to the LOGO clause.[7]  Here, the government's reliance upon it becomes relevant because, as already noted, the LOGO clause shields the government from reimbursing CB Portable for those CLINs beyond their allotted funding, regardless of the requirements of the termination for convenience clause (finding 4).  Accordingly, upon exhaustion of the remaining CLIN funds, any additional charges that would otherwise be recoverable will have to exclude amounts that are only associated with the five CLINs.  However, fair compensation is fully recoverable for charges associated with the two categories of work excepted from the LOGO's coverage, meaning the perpetual portable restrooms/hand washing station and the changed work.

_____

[7] This is derived by subtracting the $21,630 in price owed under the five CLINs from the $32,960 allotted to them.

## CONCLUSION

CB Portable is entitled to recover the contract price for all the units it delivered under the contract's five CLINS, the perpetual portable restrooms/hand washing station, and equipment provided in response to government orders stemming from the contract change. The number of units provided will be determined in the quantum stage of the proceedings. It is also entitled to the fair compensation that resulted from the termination that it can demonstrate consistent with this decision.

Dated: August 16, 2023

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63449, Appeal of CB Portable Toilet Rental and Services, rendered in conformance with the Board's Charter.

Dated: August 16, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13